**LAKESHORE LAW CENTER**
**Jeffrey Wilens, Esq. (State Bar No. 120371)**
**18340 Yorba Linda Blvd., Suite 107-610**
**Yorba Linda, CA 92886**
**714-854-7205**
**714-854-7206 (fax)**
**jeff@lakeshorelaw.org**

**THE SPENCER LAW FIRM**
**Jeffrey P. Spencer, Esq. (State Bar No. 182440)**
**903 Calle Amanecer, Suite 220**
**San Clemente, CA 92673**
**949-240-8595**
**949-240-8515 (fax)**
**jps@spencerlaw.net**

**Attorneys for Plaintiff**

### UNITED STATES DISTRICT COURT,

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANA A. KEEN, on behalf of herself and all persons similarly situated, | ) Case No. 8:14-cv-00814-JVS-JCG |
| | ) Complaint filed April 14, 2014 |
| | ) Trial Date: January 5, 2016 |
| | ) Pre-Trial Date: Vacated |
| Plaintiff, | ) Discovery Cutoff: |
| | ) **Class Action** |
| v. | ) |
| | ) **PLAINTIFF'S MOTION FOR** |
| CORAL REEF PRODUCTIONS, INC., ANTHONY TOMA, and Does 1 through 100 inclusive, | ) **FINAL APPROVAL OF** |
| | ) **CLASS ACTION SETTLEMENT,** |
| | ) **ENTRY OF FINAL JUDGMENT,** |
| | ) **POINTS AND AUTHORITIES** |
| | ) **IN SUPPORT** |
| | ) Hearing Date: June 6, 2016 1:30 pm |
| | ) Department 10C |
| Defendants. | ) Hon. James V. Selna, District Judge |

TO EACH PARTY AND THEIR ATTORNEY OF RECORD:

1

PLEASE TAKE NOTICE that on the 6th day of June 2016, at the hour of 1:30 p.m. or as soon thereafter as counsel may be heard in Department 10C of the United States District Court, Central District of California, 411 West Fourth Street, Santa Ana, California, Plaintiff Briana A. Keen will move for an order granting final approval of a class action settlement and entry of final judgment.

Local Rule 7-3 should not apply as this motion has been filed pursuant to the Stipulation of Settlement however counsel have met and conferred on several occasions concerning this settlement more than seven days prior to the filing of this motion.  (Wilens Declaration, ¶ 2.)

This application is made pursuant to the terms of the Settlement Agreement dated as of October 19, 2015 (the "Agreement") entered into by and among the following Parties (the "Parties"): (i) Plaintiff Briana A. Keen (the "Representative Plaintiff" or "Plaintiff"), on behalf of herself and each of the Settlement Class Members (collectively "Class Members"), on the one hand; and (ii) Defendants Coral Reef Productions, Inc. and Anthony Toma (Collectively "Defendants") on the other hand.

Said Application is made on the grounds set forth in the accompanying materials.  This Application will be based upon this notice, the points and authorities set forth below, the attached declarations, and

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT—8:14-CV-00814-JVS-JCG

the complete files and records in this action.  A proposed final judgment is concurrently filed.

DATED: May 9, 2016

Respectfully submitted,

By  _____

JEFFREY WILENS
Attorney for Plaintiff

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT—8:14-CV-00814-JVS-JCG

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES .........................................................................................ii

POINTS AND AUTHORITIES .....................................................................................1

ARGUMENT..................................................................................................................1

   I.  SUMMARY OF ARGUMENT...........................................................................1

   II.  SUMMARY OF CLAIMS AND DEFENSES AND SETTLEMENT EFFORTS. .........1

     A.  PLAINTIFF'S CONTENTIONS ............................................................1

     B.  DEFENDANTS' CONTENTIONS AND CHALLENGES. .................... 4

     C.  SETTLEMENT EFFORTS. ..................................................................... 5

   III.    TERMS AND CONDITIONS OF THE SETTLEMENT. ..................................... 5

   IV. NOTICE WAS PROVIDED AND THERE WERE NO OPT-OUTS AND SO FAR
     NO OBJECTIONS. ................................................................................................ 7

   V. THE  APPLICATION  FOR  FINAL  APPROVAL  OF  THE  CLASS  ACTION
     SETTLEMENT SHOULD BE APPROVED. ......................................................... 9

     A.  PROCEDURE   FOR   FINAL   APPROVAL   OF   CLASS   ACTION
      SETTLEMENT. ....................................................................................... 9

     B.  THE   PROPOSED   SETTLEMENT   IS   FUNDAMENTALLY   FAIR,
      ADEQUATE AND REASONABLE. .................................................... 10

      1.    STRENGTH OF PLAINTIFF'S CASE, RISK OF MAINTAINING
      CLASS CERTIFICATION. .................................................................... 10

      2. THE  RISK,  EXPENSE,  COMPLEXITY,  AND  DURATION  OF
      FURTHER LITIGATION. ...................................................................... 12

      3. THE AMOUNT OF SETTLEMENT. ...............................................13

      4. INVESTIGATION AND DISCOVERY. ..........................................13

      5. THE EXPERIENCE AND VIEWS OF COUNSEL. ...................... 14

i

7. THE REACTION OF CLASS MEMBERS TO THE PROPOSED SETTLEMENT..........................................................................................15

VI. THE REQUEST FOR A $10,000 INCENTIVE AWARD TO THE PLAINTIFF SHOULD BE GRANTED.....................................................................15

VII.   THE REQUEST FOR ATTORNEY'S FEES OF $300,000 AND COSTS OF $8,705 TO THE PLAINTIFF SHOULD BE GRANTED. ........................................17

A. ATTORNEY'S FEES OF $300,000 IS JUSTIFIED USING THE PERCENTAGE OF THE FUND APPROACH...................................................19

B. CROSS-CHECKING WITH THE LODESTAR SUPPORTS THE FEE AWARD.........................................................................................21

1.   Hours worked on case .............................................................. 22

2.   Hourly Rates............................................................................. 23

3.   Calculation of Lodestar and enhancement ............................. 24

C. CLASS COUNSEL WILENS SHOULD BE REIMBURSED FOR COURT COSTS OF $8,705............................................................................25

CONCLUSION..............................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

<u>Acosta</u> v. <u>Trans Union, LLC</u> (C.D.Cal. 2007) 243 F.R.D. 377........................................ 10

<u>Boeing Co</u>. v. <u>Van Gemert</u> (1980) 444 U.S. 472 ............................................................ 18

<u>Fischel</u> v. <u>Equitable Life Assurance Soc'y of the U.S.</u> (9th Cir. 2002) 307 F.3d 997 ........ 18

<u>Gonzalez</u> v. <u>Southern Wine & Spirits of Am., Inc.</u> (C.D.Cal. 2014) 2014 U.S. Dist. LEXIS 57541 ............................................................................................................................. 24

<u>Hanlon</u> v. <u>Chrysler Corp</u>. (9th Cir. 1998) 150 F.3d 1011.............................................10, 18

<u>In re Am. Apparel S'holder Litig</u>. (C.D.Cal. 2014) 2014 U.S. Dist. LEXIS 184548 .......... 21

<u>In re Immune Response Sec. Litig</u>. (S.D.Cal. 2007) 497 F.Supp.2d 1166 ........................ 21

ii

<u>In re</u> <u>Toyota</u> <u>Motor</u> <u>Corp</u>. <u>Unintended</u> <u>Acceleration</u> <u>Mktg</u>., <u>Sales</u> <u>Practices</u>, <u>&</u> <u>Prods</u>.
   <u>Litig</u>. (C.D. Cal. June 17, 2013) 2013 U.S. Dist. LEXIS 94484 ............... 11, 14, 17, 18, 25

<u>In re</u> <u>Toys</u> <u>"R"</u> <u>Us-Del.</u>, <u>Inc</u>. <u>Fair</u> <u>&</u> <u>Accurate</u> <u>Credit</u> <u>Transactions</u> <u>Act</u> <u>(FACTA)</u> <u>Litig</u>.
   (C.D.Cal. 2014) 295 F.R.D. 438 .................................................................. 16

<u>Kearney</u> v. <u>Hyundai</u> <u>Motor</u> <u>Am</u>. (C.D.Cal. 2013) 2013 U.S. Dist. LEXIS 91636 ............. 23

<u>Kerr</u> v. <u>Screen</u> <u>Extras</u> <u>Guild</u>, <u>Inc</u>. (9th Cir. 1975) 526 F.2d 67 .......................................... 22

<u>Miller</u> v. <u>Ghirardelli</u> <u>Chocolate</u> <u>Co</u>. (N.D.Cal. 2015) 2015 U.S. Dist. LEXIS 20725 .... 18, 19

<u>Missouri</u> v. <u>Jenkins</u> (1989) 491 U.S. 274 ......................................................... 24

<u>Morales</u> v. <u>Stevco</u>, <u>Inc</u>. (E.D.Cal. Mar. 22, 2013) 2013 U.S. Dist. LEXIS 41799 ............. 18

<u>Obesity</u> <u>Research</u> <u>Inst</u>., <u>LLC</u> v. <u>Fiber</u> <u>Research</u> <u>Int'l</u>, <u>LLC</u> (S.D.Cal. 2016) 2016 U.S. Dist.
   LEXIS 52463 ......................................................................................... 24

<u>Perfect</u> <u>10</u>, <u>Inc</u>. v. <u>Giganews</u>, <u>Inc</u>. (C.D.Cal. 2015, 2015 U.S. Dist. LEXIS 54063 ............ 24

<u>Rodriguez</u> v. <u>West</u> <u>Publishing</u> <u>Corp</u>. (9th Cir. 2009) 563 F.3d 948 ............................. 11, 16

<u>Rosales</u> v. <u>El</u> <u>Rancho</u> <u>Farms</u> (E.D.Cal. 2015) 2015 U.S. Dist. LEXIS 95756 ................... 22

<u>Six</u> <u>Mexican</u> <u>Workers</u> v. <u>Arizona</u> <u>Citrus</u> <u>Growers</u> (9th Cir. 1990) 904 F.2d 1301 ............. 18

<u>Staton</u> v. <u>Boeing</u> <u>Co</u>. (9th Cir. 2003) 327 F.3d 938 .................................. 10, 16, 18, 19, 22

<u>Tarlecki</u> v. <u>Bebe</u> <u>Stores</u>, <u>Inc</u>. (N.D.Cal. 2009) 2009 U.S. Dist. LEXIS 102531 ................ 20

<u>Vizcaino</u> v. <u>Microsoft</u> <u>Corp</u>. (9th Cir. 2002) 290 F.3d 1043 ........................................ 20, 24

<u>Williams</u> v. <u>MGM-Pathe</u> <u>Communs</u>. <u>Co</u>. (9th Cir. 1997) 129 F.3d 1026 .......................... 19

## **Statutes**

Business and Professions Code § 17200 ...................................................... 2

Labor Code § 1703 ............................................................................... 3

Labor Code § 1704.2 ............................................................................ 4

Labor Code § 1704.3 ............................................................................ 2

## **Other Authorities**

2 Conte & Newberg, <u>Newberg on Class Actions</u> § 11.25 (3d ed. 1992) ......................... 9, 10

<u>Manual for Complex Litigation</u> (Third) § 30.41 (1995) ...................................... 9, 10

**POINTS AND AUTHORITIES**

**ARGUMENT**

## I.   SUMMARY OF ARGUMENT.

The Parties to the Settlement Agreement ("Agreement") request the issuance of an order granting final approval of the Settlement Agreement and entry of a final judgment.  On January 26, 2016 the Court granted Preliminary Approval of the Class Settlement and directed Notice to be sent to the class members. (Wilens Declaration, ¶ 3; Exhibit 1.)  For the same reasons the Court granted preliminary approval of the class action settlement it should grant final approval.

Thanks to this lawsuit, Defendants have ceased the challenged business practice, will provide free membership to 8,822 Main Class members with a value of **$1,058,640** and will pay monetary compensation to class members of **$614,500** less the costs of class administration, attorney's fees and costs, and any incentive awards granted by the Court. The total value of the settlement is **$1,673,140.**

## II.   SUMMARY OF CLAIMS AND DEFENSES AND SETTLEMENT EFFORTS.

### A.   PLAINTIFF'S CONTENTIONS

The Fee-Related Talent Services Law (FTSL), California Labor Code, Part 6, Division 2, Chapter 4.5, regulates "talent services."  Defendants operate One Source Talent (OST), a talent listing service, which is a type of "talent service." (Doc. 47, ¶¶ 22, 23, 26.)  The Second Amended Complaint alleges that Defendants

1

violated the FTSL by utilizing a contract that failed to contain required disclosures, contained an auto renewal provision and failed to specify the required cancellation date.  Plaintiff also alleged Defendants did not maintain records showing they had permission to post the job listings as mandated by Labor Code § 1704.3 (c) (2). (Doc. 47, ¶¶ 52-54.) In addition, the SAC alleges Defendants' conduct violated Business and Professions Code § 17200, et. seq. (UCL).

The Court previously certified two classes for settlement purposes.  The Main Class is defined as follows: "All California residents who contracted with and paid money to Defendants for membership in One Source Talent between April 14, 2010 and May 31, 2015."  The Refund Subclass is defined as follows: "All members of the Main Class who, according to Defendants' records, requested a refund or otherwise stated they wanted to cancel the contract or get their money back, but Defendants denied the refund."  (Doc. 65-1.)  Defendants have identified approximately 8,822 members of the Main Class and 129 members[1] of the Refund Subclass. (Wilens Declaration, ¶ 4.)

On or about March 4, 2014, Plaintiff purchased a membership with OST in the hope it would advance her modeling/acting career.  She paid an initial fee of

---

[1]At preliminary approval, Defendants had identified 122 Refund Class members, but they subsequently identified two additional persons when preparing the class member lists.   After class notice was sent, five class members requested reclassification to be Refund Class members.  Defendants reviewed their evidence and agreed.  The Settlement Agreement contemplated such revisions could occur.

$495.00 and agreed to make monthly payments of $39.95.  Prior to making the payment she signed a written contract.  (Doc. 47, ¶ 38.)  Labor Code § 1703 (d) provides that unless such contract included language specified in subdivisions (a) to (f), it was voidable at any time at the election of the artist.  Plaintiff alleges that the membership agreement she signed was the same contract signed by the class members and it does not comply with various requirements of the aforementioned subdivisions (a) to (f).  The particular deficiencies include a prohibited "auto-renew" feature, the failure to state the cancellation deadline, and the failure to print a disclosure in the correct font and location.  (Doc. 47, ¶¶ 39, 43-50.)

Later in March 2014, Plaintiff contacted Defendants and attempted to cancel her service and receive a full refund of her initial payment.  Defendants agreed to cancel her service so she was <u>not</u> charged the monthly fee, but they refused to refund her $495.  (Doc. 47, ¶¶ 41-42.)

In bringing the lawsuit, Plaintiff sought a declaratory judgment stating Defendants' contract was unlawful, a finding that would allow her and all members of the Main Class to void their contracts, but which would not actually void all of those contracts or result in any financial payments.  In addition, Plaintiff sought a refund of all payments she made as well any payments made by other customers whose refund requests were denied (i.e., Refund Subclass).  (Doc. 47, ¶¶ 55-56.)

In addition, Plaintiff sought to recover treble damages pursuant to Labor

Code § 1704.2, which allows a person injured by a violation of this chapter to recover at least three times the amount paid.  Plaintiff contended that when her cancellation and refund requests were ignored, she was injured.  Subclass members who also requested but were denied refunds were injured as well.  Therefore, Plaintiff sought to recover treble damages on behalf of herself and the Subclass. (Doc. 47, ¶¶ 57-59.)  Further, Plaintiff sought restitution under the UCL on behalf of herself and Subclass members for the money they paid based on the illegal contract.  (Doc. 47, ¶ 66.) Finally, Plaintiff sought an injunction against future use of the illegal contract.  (Doc. 47, ¶ 69.)

## B.  DEFENDANTS' CONTENTIONS AND CHALLENGES.

Defendants deny that they engaged in any unlawful activity or have any liability. Briefly, Defendants intended to oppose class certification based on arguments presented in motions to dismiss the class claims.   (Docs. 24, 37.) Defendants also claim they had written permissions to post the employment opportunities.  Defendants also contend no class members were damaged and only those who specifically requested a refund could seek to void their contracts. Given the Court's mixed rulings on these issues it is not clear how the Court would rule in a future motion for class certification or whether Plaintiff would prevail at trial. (Wilens Declaration, ¶ 5.)  Defendants have also presented evidence One Source Talent is experiencing financial hardship.  (Wilens Declaration, ¶ 6.)

## C.    SETTLEMENT EFFORTS.

The case settled after two mediations in May and October 2015.  (Wilens Declaration, ¶¶ 7-9.)

## III.    TERMS AND CONDITIONS OF THE SETTLEMENT.

The terms and conditions of the Settlement Agreement are summarized below.  (Doc. 61-5, pp. 8-13.):

1.  Defendants were originally to set aside $614,500 into a common fund (Gross Settlement Fund) to pay all monetary compensation and other expenses set forth below.  This is an increase of $3,500 over the amount in the Settlement Agreement and necessary as explained in paragraph 3 below.  Other compensation will be provided in the form of valuable services.

2.  The Net Settlement Fund (NSF) shall be the GSF less costs of restitution, damages payments, settlement administration, incentive award to Plaintiff, and class counsel's fees and costs.  There will be no reversion to Defendants under any circumstances.

3.  Each member of the Refund Class will automatically receive $500, which is slightly more than they would have paid for membership.  Since they could cancel the recurring monthly charge at any time, those charges are not an issue.  No Claim Form need be submitted.  This will be in lieu of the free membership and other compensation.  It was anticipated that $61,000 would be refunded but

Defendants identified seven additional persons who should be members of Refund Class and will contribute another $3,500. So the total payment to Refund Class members will be $64,500.

4. The Main Class members will automatically receive free membership as described below plus a share of the common fund if they submit a Claim Form.

5. Defendants will automatically give each class member (except those in the Refund Class) three free months of membership in One Source Talent, now known as Nine9. The normal monthly fee is $40. The value of the free membership to 8,822 class members is 8,822 x $40 per month x 3 months = $1,058,640. Class members will not be required to provide a credit card and there will be no obligation to renew after the three-month period.

6. In addition, the class members (except those in the Refund Class) will receive an equal share of the NSF provided they have submitted a timely Claim Form. They had 90 days after preliminary approval to submit a claim. There was an online Claim Form or they could have mailed in a paper Claim Form.

7. Any payments to class members which are not deliverable or which are not negotiated will be submitted to the State Controller's Office pursuant to law as unclaimed property, where they can be claimed by the claimants later.

8. CPT Group will serve as the Settlement Administrator, including finalization of the class list, maintaining the settlement website, receiving claims, and making

the payments. Originally, the costs of the Settlement Administrator were to be paid out of the GSF, and were not to exceed $19,500.  CPT has submitted a declaration requesting an increase to $21,500.   To save money, Plaintiff retained Direct Mail Center to email the class notices and will absorb that cost into her counsel's reimbursable expenses.

9. Class Notice was to be provided by first class mail to those in the Refund Class and by email to those in the Main Class.  The reason for the distinction was that mailing addresses were readily available only for persons in the Refund Class as was explained in the declaration of Anthony Toma submitted with the preliminary approval papers.  If emailed notices were undeliverable, Defendants will incur the expense to develop physical addresses for those Main Class members.

10.    Defendants will not oppose a request for an incentive award on behalf of class representative Keen provided such request does not exceed $10,000.  This payment, subject to Court approval, will be made out of the GSF.

11. Defendants will not oppose a request for attorney's fees and costs by the Class Counsel provided such request for fees does not exceed $300,000 and such request for costs does not exceed $10,500.  Any award by the Court will be paid out of the GSF.

**IV.    NOTICE WAS PROVIDED AND THERE WERE NO OPT-OUTS AND SO FAR NO OBJECTIONS.**

The Court ordered the approved three forms of Class Notice.  A Short Form Notice was emailed to the last known email addresses of the Main Class Members. A Long Form Notice was mailed to the last known street address of Refund Class Members as well as to any Main Class Members with non-functional email addresses.   Finally, the Long Form Notice was posted on the Internet at www.onesourcetalentsettlement.com as well as on Class Counsel's website page discussing this lawsuit.  (Doc. 65-1, pp. 10-11.)

The Long Form notices were mailed on February 9, 2016 and the Short Form notices were emailed on February 10, 2016.  With respect to the Short Form notices, the total to be sent was 8,827[2] but there were 154 incomplete email addresses and 543 invalid email addresses. The Long Form notice was also posted on the settlement administration website and Class Counsel's own website in the required time frame. (Wilens Declaration, ¶ 10.)  The Long Form notices were mailed to the original 124 Refund Class members and another 502 Long Form notices were mailed to Main Class members who did not have functioning email addresses.   Notices that were returned to sender were remailed where possible. Ultimately 143 notices could not be emailed or mailed to the 9,000+ class members.  (Cunningham Declaration, ¶¶ 6-10.)

---

[2]After five Main Class members were moved to the Refund Class the total number of Main Class members became 8,822.

8

The deadline to submit claims was April 25, 2016.  As of the current date, there were 787 valid claims (and one late claim that the Court may deem valid) by Main Class members. (Cunningham Declaration, ¶ 17.)   Assuming the Court awards attorney's fees and costs, settlement administration costs and the incentive award as requested, the payout to each of the 788 Main Class members will be $264.29.  As noted, each Refund Class member will receive $500.

Finally, CAFA notices were sent on December 28, 2015 to the United States Justice Department and California Labor Commissioner, Division of Labor Standards Enforcement.  Neither governmental agency has sought to intervene in this case.  (Kislik Declaration, ¶ 2.)

No member of either class filed an objection so far.  No member of either class requested to opt-out.  (Cunningham Declaration, ¶¶ 10-11.)  It is fair to say the settlement has been met with approval from the Class Members.

## V.   THE APPLICATION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT SHOULD BE APPROVED.

### A.   PROCEDURE FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT.

In federal courts, approval of a class action settlement follows a two-step process.  (Manual for Complex Litigation (Third) § 30.41 (1995) (the "Manual"); 2 Conte & Newberg, Newberg on Class Actions § 11.25 (3d ed. 1992) ("Newberg").   In the first step, the court makes a preliminary assessment of

9

JCG

whether the settlement appears to be sufficiently within the range of a fair settlement to justify providing notice of the proposed settlement to class members; in the second step, the court considers, <u>inter alia</u>, the response of class members and makes a final decision regarding the fairness of the settlement.   (<u>Manual</u> § 30.41; <u>Newberg</u> § 11.25.)   The Court already made its preliminary assessment. Nothing has changed.   There are no objections so far and no opt-outs.

## B.   THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, ADEQUATE AND REASONABLE.

To determine if a settlement is fair, courts consider the following factors: (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement. (See, e.g., <u>Hanlon</u> v. <u>Chrysler Corp</u>. (9th Cir. 1998) 150 F.3d 1011, 1027; <u>Staton</u> v. <u>Boeing Co</u>. (9th Cir. 2003) 327 F.3d 938, 959.) "To determine whether preliminary approval is appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." (<u>Acosta</u> v. <u>Trans Union, LLC</u> (C.D.Cal. 2007) 243 F.R.D. 377, 386.)

### 1.   <u>STRENGTH OF PLAINTIFF'S CASE, RISK OF MAINTAINING CLASS CERTIFICATION.</u>

While the Court should consider both the likelihood of success on the merits and the range of possible recovery, absolute precisions is impossible and a "ballpark valuation" is appropriate.  (See e.g., <u>Rodriguez</u> v. <u>West</u> <u>Publishing</u> <u>Corp.</u> (9th Cir. 2009) 563 F.3d 948, 964-65; <u>In</u> <u>re</u> <u>Toyota</u> <u>Motor</u> <u>Corp.</u> <u>Unintended</u> <u>Acceleration</u> <u>Mktg.</u>, <u>Sales</u> <u>Practices</u>, <u>&</u> <u>Prods.</u> <u>Litig.</u> (C.D. Cal. June 17, 2013) 2013 U.S. Dist. LEXIS 94484, *224-225).)

Plaintiff has an excellent chance of proving the contract violated the FTSL However, this Court has previously ruled a damages class cannot be certified based on that theory alone although a Rule 23(b)(2) class probably can be certified. There is tremendous risk to both sides if that was the final result of this litigation. On the one hand, there would be a Court order finding that the contract signed by 8,000+ class members is voidable at any time, meaning any number of customers could step forward and demand restitution of $500.  That liability (without even counting the monthly fees) could exceed $4,000,000, which is basically Defendants' total revenue.  In a declaration supporting the Notice of Removal, Defendants stated that from April 2010 to April 2014, gross revenue in California was $4.8 million.  (Doc. 1-2, ¶ 9.)

On the other hand, it is possible very few of the Class Members would step forward and bring actions to void their contracts, either because of lack of notice, lack of will or lack of access to legal resources or assistance.  It would also be

difficult if not impossible for them to find attorneys to bring individual rescission actions for $500.   That result would leave most class member entirely uncompensated and allow Defendants to almost entirely avoid financial responsibility for their illegal conduct.

## 2. THE RISK, EXPENSE, COMPLEXITY, AND DURATION OF FURTHER LITIGATION.

This case was filed April 2014. Already substantial legal fees have been incurred by Plaintiff's counsel.  Litigation events include hearings on two motions to dismiss, a deposition and extensive written discovery, and two mediations.

Absent this settlement, Plaintiff was posed to file a contested motion for class certification.  Based on the Court's earlier rulings on challenges to the class allegations, it was likely to certify a Rule 23(b)(2) class but it was very uncertain that it would certify a Rule 23(b)(3) class.  Defendants were expected to vigorously contest the claim that they lacked written permissions to post the job listings. Partial discovery results with respect to that claim had shown Defendants did have complete permission information for some of the listings offered to Plaintiff and had incomplete information for others.  Production of thousands of other listings documents would have placed a great burden on Defendants (according to them) and would have delayed resolution of the case.  In addition, Defendants would have argued the inadequacy of the documentation did not result in any injury to Plaintiff or the Class Members because the listings were "legitimate" even though

12

the documentation deficient.  (Wilens Declaration, ¶ 11.)  While Plaintiff does not credit this argument, it factors into the risk assessment.

### 3. THE AMOUNT OF SETTLEMENT.

The Settlement provides for compensation in the form of $614,500 in cash and $1,058,640 in services.  The aggregate value is $1,673,140.  Specifically, each member of the Refund Class (i.e., persons who actually requested but were denied a refund and thus arguably are the most seriously injured victims) will receive a $500 refund, which should amount to a full refund for them.  Second, the other class members who actually used the services will receive both three additional months of free service (value of $120) and approximately $264 in cash (assuming the requested attorney's fees, costs, settlement administration costs and incentive award are granted).   The Settlement caps attorneys' fees at $300,000 and expense reimbursement at $10,500.

### 4. INVESTIGATION AND DISCOVERY.

Plaintiff conducted extensive written discovery and reviewed multiple sets of responses to interrogatories and requests for production of documents, including production of over 1,100 pages of documents, which were analyzed to derive facts to support the prosecution of this lawsuit. Plaintiff responded to document production requests, produced documents and was subjected to a five-hour deposition.  Plaintiff's counsel obtained the contact information for and sent emails

to approximately 124 class members and received communications back containing useful information from approximately 30 class members.  If the case had to proceed to trial, those communications and other discovery efforts would have helped the prosecution of this case. The extensive discovery conducted by the Plaintiff was the impetus for the proposed settlement. (Wilens Declaration, ¶ 12.)

### 5. THE EXPERIENCE AND VIEWS OF COUNSEL.

Plaintiff's Counsel are very experienced in serving as class counsel.  They believe the settlement is reasonable because these Defendants would never be able to pay anything close to 100% restitution of all payments made by 8,800+ class members. Moreover, the limit of liability under the insurance policy is only $1,000,000 and the carrier initially denied coverage, yet it ended up contributing $550,000 of the settlement funds.  In light of the carrier's possible defenses to coverage, that is a reasonable percentage of its total exposure.    (Wilens Declaration, ¶ 13; Spencer Declaration, ¶ 2.)  Additionally, since the services of two professional mediators were used, this supports a finding the settlement valuation by the parties was not collusive.  (In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Litig., supra, 2013 U.S. Dist. LEXIS 94484, *237.) Based upon the extensive discovery and litigation, Plaintiff's counsel believe that the proposed settlement is fair, reasonable and adequate and is in the best interest of the class.

## 7. THE REACTION OF CLASS MEMBERS TO THE PROPOSED SETTLEMENT.

As indicated above, 788 claims have been submitted and there have been no objections or opt-outs.  Plaintiff's counsel has personally communicated with at least 30 class members and all have expressed support and interest.  Several requested that they be transferred to the Refund Class and presented evidence that they qualified.  When that evidence was presented to Defendants, they agreed to the reclassification.  (Wilens Declaration, ¶ 14.)

## VI.   THE REQUEST FOR A $10,000 INCENTIVE AWARD TO THE PLAINTIFF SHOULD BE GRANTED.

The Settlement Agreement provides that the class representative Briana Keen may seek a $10,000 incentive award for her efforts spearheading the class action on behalf of the class over the two years the case has been litigated.  This is in addition to her normal compensation as a Class Member. This amount is within the acceptable range of incentive awards. Class representative Keen was instrumental in bringing the lawsuit and obtaining the settlement on behalf of the class and in causing the Defendants to cease their violations of the FTSL.  One hundred and twenty-nine persons requested refunds and were denied but all except Ms. Keen apparently gave up.  Only Ms. Keen sought out legal representation and agreed to lead a time-consuming class action that has resulted in a recovery for the other frustrated refund-seekers, as well as benefits for other customers.

A class representative is entitled to a reasonable incentive payment. (<u>Staton</u>, <u>supra</u>, 327 F.3d at p. 977 (citing awards of $2,000, $5,000 and $25,000.) "Incentive awards are fairly typical in class action cases. Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." (<u>Rodriguez</u> v. <u>West</u> <u>Publishing</u> <u>Corp</u>., <u>supra</u>, 563 F.3d at pp. 958-59 (internal citations omitted).) The criteria courts consider in determining whether to approve an incentive award include: the risk to the class representative, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. (<u>In</u> <u>re</u> <u>Toys</u> <u>"R"</u> <u>Us-Del.,</u> <u>Inc.</u> <u>Fair</u> <u>&</u> <u>Accurate</u> <u>Credit</u> <u>Transactions</u> <u>Act</u> <u>(FACTA)</u> <u>Litig</u>. (C.D.Cal. 2014) 295 F.R.D. 438, 470.)

Plaintiff Keen spent at least 60 hours assisting counsel in the prosecution of this lawsuit, including traveling 80 miles each way for her deposition. (Wilens Declaration, ¶ 15; Keen Declaration, ¶ 13.) Moreover, Plaintiff Keen was subjected to unusual pressure to abandon this class action earlier in the litigation. Were it not for her diligence, the class would be getting nothing now. After she rejected a

$6,750 (plus attorney's fees) settlement offer that would have required her to drop the class claims, Defendant Toma twice emailed Keen directly offering to pay her six or seven thousand today.  When she ignored his emails, Toma then tried to friend her on Facebook.  Defendant Toma also approached her, during a break in her deposition, and outside the presence of her lawyer, and offered to drive her home (more than two hours away).  Presumably, he intended to use that "alone time" to cajole her to abandon the case, but she found it to be "very creepy." (Keen Declaration, ¶¶ 5-12.)

Under these circumstances, an incentive award in the amount of $10,000 should be awarded. This Court previously approved incentive awards calculated based upon $100 per hour. (In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Litig., supra, 2013 U.S. Dist. LEXIS 94484, *320.) That approach would support a $6,000 incentive award.  Factoring in the unusual pressures on Plaintiff to settle the case in a manner that would harm the class, a total award of $10,000 is justified.

## VII.   THE REQUEST FOR ATTORNEY'S FEES OF $300,000 AND COSTS OF $8,705 TO THE PLAINTIFF SHOULD BE GRANTED.

The Settlement Agreement provides that Class Counsel should be awarded attorney's fees of up to $300,000 and costs reimbursement of up to $10,500.

In common-fund cases, the Ninth Circuit requires district courts to assess proposed fee awards under either the "lodestar" method or the "percentage of the

17

fund" method. (See Fischel v. Equitable Life Assurance Soc'y of the U.S. (9th Cir. 2002) 307 F.3d 997, 1006; Hanlon, supra, 150 F.3d at 1029.) The Ninth Circuit has established a "benchmark" that fees should equal 25% of the settlement, Six Mexican Workers v. Arizona Citrus Growers (9th Cir. 1990) 904 F.2d 1301, 1311, although courts diverge from the benchmark based on a variety of factors, including "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases."   (Morales v. Stevco, Inc. (E.D.Cal. Mar. 22, 2013) 2013 U.S. Dist. LEXIS 41799, at *5.) This Court has found that fee awards typically are 25%, 30% or 33%.   (In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Litig., supra, 2013 U.S. Dist. LEXIS 94484, *306.)

When determining the value of a settlement, courts consider both the monetary and non-monetary benefits that the settlement confers. (See, e.g., Staton, supra, 327 F.3d at pp. 972-974; In re Toyota Motor Corp. Unintended Acceleration, supra, 2013 U.S. Dist. LEXIS 123298, at *311; Miller v. Ghirardelli Chocolate Co. (N.D.Cal. 2015) 2015 U.S. Dist. LEXIS 20725, at *15.)

Moreover, courts must award class counsel fees based on the entire common fund created for the class rather than the actual amount that is ultimately claimed. (Boeing Co. v. Van Gemert (1980) 444 U.S. 472, 480-81; Six (6) Mexican Workers, supra, 904 F.2d at p. 1311; Williams v. MGM-Pathe Communs. Co. (9th

18

Cir. 1997) 129 F.3d 1026, 1027; Miller, supra, 2015 U.S. Dist. LEXIS 20725, at *15.)

Finally, the costs of notice to the class and settlement administration should also be included in the value of the settlement as long as that cost is reasonable. (See, Staton, supra, 327 F.3d at pp. 974-75.)  After all, if Defendants did not pay for money for this purpose, Class Counsel would have paid it and then would have justifiably sought reimbursement of the costs as a litigation expense.

## A.  ATTORNEY'S FEES OF $300,000 IS JUSTIFIED USING THE PERCENTAGE OF THE FUND APPROACH.

The Settlement provides for compensation in the form of $614,500 in cash and $1,058,640 in services.  The aggregate value is $1,673,140. The fees sought are $300,000 which is just under 18% of the common fund.  That is well within the 25% benchmark so higher fees would be justified.

In the order granting preliminary approval, the Court recognized that both the cash and non-cash components of the settlement should be included in the setting of the value of the common fund.  (Doc. 65-1, p. 10, n. 4.)  That is consistent with the cases cited above.  This is not a "coupon" settlement as the class members are receiving free services with no obligation to pay to continue the services after the free period expires.  There is no automatic conversion to a paid program either.

There is no reason to depart from the 25% benchmark in this case.  Courts

19

seeking to justify a departure will consider factors including (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. (Vizcaino v. Microsoft Corp. (9th Cir. 2002) 290 F.3d 1043, 1048-1050; Tarlecki v. Bebe Stores, Inc. (N.D.Cal. 2009) 2009 U.S. Dist. LEXIS 102531, at *10.)  None of these factors merit a departure from the benchmark.  As noted above, the results achieved were good considering the limited finances of Defendants and limited available insurance coverage.  The carrier is contributing 55% of the policy limits not including its costs of defense. Refund class members are getting their money back and other customers who did not request a refund but submitted a claim will receive $264 while all the customers (except the Refund Class members) will receive three free months of service.

The risks of litigation are also discussed above and were significant. The Court has before it prior pleadings and motions filed by Class Counsel and can assess the work quality was good.   Representation was provided on a contingent fee basis and since this is an undeveloped area of law there was substantial risk to Class Counsel, who had to overcome not only motions to dismiss and strike class allegations but questions about the insurance coverage.  (Wilens Declaration, ¶ 16; Spencer Declaration, ¶ 3.)

20

Finally, the fee percentage sought is consistent with similar class action settlements. For example, in In re Am. Apparel S'holder Litig. (C.D.Cal. 2014) 2014 U.S. Dist. LEXIS 184548, at *68, the settlement was about 40% of the potential recovery at trial.  That court considered that recovery to be a substantial and therefore it found application of the 25% benchmark to be reasonable. Similarly, in In re Immune Response Sec. Litig. (S.D.Cal. 2007) 497 F.Supp.2d 1166, 1175, the court applied the 25% benchmark even though the recovery was only 12% of the maximum damages.

In the instant case, the Refund Class members are receiving 100% of the initial payment which Defendants had previously refused to refund.  The Main Class members did not ask for any refund but those who submitted a claim are receiving $264 which would be more than half of the typical $500 initial membership fee.  It is not likely they would have recovered at trial the monthly fees since they could have cancelled that obligation at any time.  View another way, the maximum possible recovery in the instant case is really the $1,000,000 policy limits and the class is getting 55% of the policy limits plus some extra money paid directly by the Defendants.  This is a very good result and it supports approving the benchmark 25% fee.

**B.     CROSS-CHECKING     WITH     THE     LODESTAR SUPPORTS THE FEE AWARD.**

Generally, when the lodestar is used as a cross-check for a fee award, the

21

Court is not required to perform an "exhaustive cataloguing and review of counsel's hours." (Rosales v. El Rancho Farms (E.D.Cal. 2015) 2015 U.S. Dist. LEXIS 95756, at *63.)

The "lodestar method" calculates attorneys' fees by multiplying the number of hours that class counsel reasonably expended on the litigation by an hourly rate that takes into consideration the region and the experience of the lawyer. (Staton, supra, 327 F.3d at p. 965.)

The Ninth Circuit has identified twelve factors used in determining the reasonableness of a fee award under a lodestar analysis: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. (Kerr v. Screen Extras Guild, Inc. (9th Cir. 1975) 526 F.2d 67, 70.)  Many of these factors overlap with those discussed in the preceding section.  Class Counsel's current lodestar support a $300,000 fee award.

### 1.   Hours worked on case

Class Counsel have reasonably expended 438 hours working on the case which is supported by their contemporaneous time records, copies of which are attached to their declarations. (Wilens Declaration ¶ 40, Exhibit 4 (319 hours); Spencer Declaration, ¶ 33, Exhibit 5 (119 hours).) There was no unnecessary duplication of effort and the combined efforts of Spencer and Wilens were often necessary to counter the two or more attorneys handing the case for the Defendants.  (Wilens Declaration ¶ 41; Spencer Declaration, ¶ 28.)

## 2. **Hourly Rates**

Both Class Counsel seek to be compensated at an hourly rate of $700.  That figure is equivalent to their current billing rates on a non-contingency fee basis. (Wilens Declaration, ¶ 17; Spencer Declaration, ¶ 4.) This rate is also supported by their considerable experience.   (Wilens Declaration, ¶¶ 18-39; Spencer Declaration, ¶¶ 5-32.)   Recently, class counsel were awarded fees at the hourly rate of $700 in a class action by the Alameda County Superior Court and earlier last year at the rate of $675 in a class action in the San Diego County Superior Court.  (Wilens Declaration, ¶¶ 22, 30; Exhibit 2, ¶ 18, Exhibit 3, ¶ 18.) The $700 rate is also consistent with rates approved for attorneys with comparable levels of experience in class actions or other complex litigation in the Central District for a 30 year attorney (Wilens) and 20 year attorney (Spencer) (<u>Kearney</u> v. <u>Hyundai Motor Am</u>. (C.D.Cal. 2013) 2013 U.S. Dist. LEXIS 91636, at *24-25) (approving

23

$800 hourly rate for 32-year attorney Steve Berman and $650 for 20 year attorney Robert Carey); (Perfect 10, Inc. v. Giganews, Inc. (C.D.Cal. 2015, 2015 U.S. Dist. LEXIS 54063, at *59, *94 (approving $825-$930 for 29 year intellectual property attorney and rates of $705 to $750 for 17-18 year attorneys); (Gonzalez v. Southern Wine & Spirits of Am., Inc. (C.D.Cal. 2014) 2014 U.S. Dist. LEXIS 57541, at *11 (approving $650 rate for 19 year attorney); (Obesity Research Inst., LLC v. Fiber Research Int'l, LLC (S.D.Cal. 2016) 2016 U.S. Dist. LEXIS 52463, at *4-8 (approving $725 rate for 30 year attorney and $675 for 20 year attorney).)

Even though Class Counsel's hourly rate has increased over the years, applying their current rate for the entire time period of this lawsuit is appropriate to offset the fact that counsel has not received any interest on the payments that would normally be made by clients on a pay-as-you-go basis. (See Missouri v. Jenkins (1989) 491 U.S. 274, 284; (Vizcaino, supra, 290 F.3d at p. 1051.)

### 3.  Calculation of Lodestar and enhancement

The lodestar is calculated as follows:  Wilens 319 hours x $700 = $223,300; Spencer 119 hours x $700 = $83,300.  Total lodestar is $306,600, which is capped at $300,000.  Two other observations.

First of all, it should be noted that above lodestar does not include work that may or will be needed after filing of this motion.  That includes:  1) reviewing and opposing any objections; 2) attending the final approval hearing; 3) addressing any

---

24

concerns raised by the Court; 4) following up with the Settlement Administrator and overseeing the distribution of settlement funds and settlement compliance as to the cash components; 5) monitoring the compliance with the free membership component.   This additional work will likely add 50 hours or $35,000 to the lodestar, but this can be disregarded if the full lodestar is awarded now. Second, there are grounds to award a slight enhancement (at least) to the lodestar based upon the results achieved, the contingent nature of representation and other factors, but again that is not necessary if the Court awards the current full lodestar.

**C.**     **CLASS COUNSEL WILENS SHOULD BE REIMBURSED FOR COURT COSTS OF $8,705.**

"An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund. (In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Litig., supra, 2013 U.S. Dist. LEXIS 94484, *316.) The settlement provides for the payment of up to $10,500 in litigation costs, but Plaintiff only seeks reimbursement of $8,705.  The expenses are all necessary and are documented in the time records attached to the Wilens declaration. (Wilens Declaration, ¶ 40.)

## CONCLUSION

For the above stated reasons, Plaintiff respectfully requests that the Court grant this Application for Final Approval of Class Settlement and enter the order concurrently submitted.

1

DATED: May 9, 2016

2

Respectfully submitted,

3

4

By   *Jeffrey Wilens*

5

JEFFREY WILENS
Attorney for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT—8:14-CV-00814-JVS-JCG